UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.     CASE NO. 8:20-cr-00201-CEH-SPF

JOHN DAVID BODDEN DIXON

### SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

Defendant John David Bodden Dixon, by and through undersigned counsel, pursuant to 18 U.S.C. §§ 3553 and 3661; U.S.S.G. §§ 3B1.2 and 5K2.0; and Rule 32(i) of the Federal Rules of Criminal Procedure, hereby moves this Honorable Court to vary downward from the applicable advisory Sentencing Guidelines range and, in addition, presents the following relevant information for the Court to consider in determining a reasonable sentence to impose in this case:

### Facts and Sentencing Considerations

Mr. Bodden Dixon pled guilty to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to United States jurisdiction. Mr. Bodden Dixon was present, along with three other crewmembers, on a small vessel that was transporting cocaine when it was interdicted by the Coast Guard in international waters. Mr. Bodden Dixon was a simple crewperson on the boat.

At the very early stages of his case, Mr. Bodden Dixon, through counsel notified the Government of his intent to plead guilty.

Mr. Bodden Dixon's proposed advisory Guidelines range, as calculated in the Presentence Report, falls at a total offense level 35 and criminal history category I. At that range, the Guidelines suggest a sentence of 168 to 210 months. After the Presentence Report was submitted, Mr. Bodden Dixon truthfully provided a safety valve interview, and, pursuant to U.S.S.G. §5C1.2, the total offense level should be decreased by two levels. While this reduction is not reflected in the final Presentence Report, it is anticipated that it will be recognized during the sentencing hearing that the application of safety valve in this case is appropriate, and therefore the sentencing guideline range should be 135 months to 168 months of imprisonment.

Mr. Bodden Dixon will ask this Court to grant additional levels to vary downward from the advisory Guidelines range based on his diminished role in the offense. He will further establish that a downward variance sentence below the advisory Guidelines range would be a sentence that is more than sufficient to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

### I. Motion for Downward Variance Based on Mr. Bodden Dixon's Diminished Role in the Offense

Defendant has not objected to the absence of a minor role adjustment in the pre-sentence report based in part on the history of this Court as it relates to this

argument and the waiver of appeal set forth in the plea agreement. However, it is the defendant's position that the facts and circumstances of this case clearly indicate that Mr. Bodden Dixon was, at most, a minor participant in the relevant conduct at issue in this case. Mr. Bodden Dixon was a simple mariner who performed no special function in the conspiracy, had no equity interest in the cocaine, and had no role in the supply or distribution chains. Based on the role he performed, Mr. Bodden Dixon moves this Court to vary downward using the end results of the guideline range which would have applied if an adjustment was made pursuant to USSG § 3B1.2(b).

## Applicable Law

The standard for assessing the applicability of a role-based downward adjustment is the two-prong test promulgated in *United States v. De Varon*, 175 F.3d 930 (11th Cir. 1999) (en banc). The first prong of *De Varon* calls for an analysis of the defendant's role in the crime in comparison to the relevant conduct for which he is held accountable under the Guidelines. *Id.* at 940-44. In devising this first prong, the Eleventh Circuit reasoned:

> [G]iven the relatively broad definition of relevant conduct under § 1B1.3, some defendants may be held accountable for conduct that is much broader than their specific acts. A conspiracy conviction is the classic example of this phenomenon. In such cases, a defendant's relevant conduct may be coextensive with the entire conspiracy even though her role in that conspiracy was relatively minor. Under these circumstances, a district court may adjust the defendant's sentence for her mitigating role in this broad conspiracy. This adjustment allows a district court to *impose a sentence that more closely mirrors the*

> *defendant's actual conduct, furthering the goals of imposing comparable sentences for similar acts*.

*Id.* at 941 (emphasis added). Accordingly, in the test's second stage, the defendant's role in the relevant conduct for which she is being sentenced is balanced against the role of other participants in that relevant conduct. *Id.* at 944-45. Specific factors relevant to the balancing determination include the amount and value of the drugs attributed to the conspiracy, the defendant's role in planning the conspiracy or in distributing the drugs, the defendant's equity interest in the drugs, and the amount of money the defendant stood to earn had the operation been successful. *Id.* at 945.

In addition to the *De Varon* test, the Sentencing Guidelines provide a definition for both minor and minimal participants. The Guidelines assert that the minor role is available to those not otherwise eligible for a minimal role adjustment, but whom are still "less culpable than most other participants." U.S.S.G. § 3B1.2 cmt., n. 5. In contrast, the minimal role is applicable to those individuals "who are plainly among the least culpable of those involved in the conduct of a group… the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.2 cmt., n. 4.

In November 2015, after conducting a nationwide study into the district-by-district application of the mitigating role downward adjustment, the Sentencing

Commission inserted into section 3B1.2's commentary specific factors for courts to consider in determining if the mitigating role adjustment is appropriate in a specific case:

> (**C**) **Fact-Based Determination.--**The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case. In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> (**i**) the degree to which the defendant understood the scope and structure of the criminal activity;
> (**ii**) the degree to which the defendant participated in planning or organizing the criminal activity;
> (**iii**) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (**iv**) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (**v**) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt, n. 3. The note goes on to provide, "[f]or example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." *Id.* It then advises, "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity." *Id.*

When providing its reasons for the Amendment, the Sentencing Commission stated that it had conducted "a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony." USSG § 3B1.2, Hist. Notes – 2015 Amend. In conducting that review, the Commission "found that mitigating role is applied inconsistently and more sparingly than the Commission intended." *Id.* Specifically, the Commission found that "[i]n drug cases, … that mitigating role is applied inconsistently to drug defendants who performed similar low-level functions (and that rates of application vary widely from district to district)." *Id.* In light of those conclusions, the Commission made the changes set forth in the 2015 amendment to 3B1.2, most notably, by adding the factors for consideration set forth above.

Drawing on the then-recent amendments to section 3B1.2, the Eleventh Circuit vacated the sentence of a "drug boat" defendant who had been denied a minor role variance in *United States v. Cruickshank*, 837 F.3d 1182 (11th Cir. 2016). In that case, the Eleventh Circuit traced the history of *De Varon* and recently-promulgated Guidelines commentary. The Court noted further that both *De Varon* and the Guidelines call for sentencing Courts to review cases in which a minor role adjustment is sought on a case-by-case basis. *Id.* at 1193-94. Likewise, the Court resolutely held that the mere fact that a defendant is a crewmember on a small ship carrying a very large quantity of controlled substances does not preclude a defendant

from receiving a minor role adjustment. *Id.* at 1194-95.  In the end, the Eleventh Circuit vacated the *Cruickshank* defendant's sentence because it found that the District Court may have reasoned that the defendant was ineligible for a minor role adjustment simply because his offense involved a large quantity of drugs.  In so holding, the Court noted that "*De Varon* stressed the fact-intensive nature of the inquiry, and the sentencing Court's role in assessing the totality of the circumstances, where no one factor is 'more important than another.'" *Id.* at 1195 *quoting De Varon*, 175 F.3d at 945.  It further recognized that, "[m]oreover, Amendment 794 clarified that a defendant could be considered for a minor-role adjustment in many circumstances, none of which turn on drug quantity." *Id. citing* Amendment 794.

## Analysis

A consideration of both the *De Varon* factors and the factors set forth in the applicable Guideline notes demonstrate that Mr. Bodden Dixon is a prime example of a defendant who acted in a mitigating role as contemplated under section 3B1.2. Mr. Bodden Dixon had no knowledge of the intricacies of this conspiracy, had no role in planning the offense or in distributing the drugs, and had no equity interest in any of the drugs that were being transported.  He certainly had no decision-making authority or any control over the operation.  He, likewise, performed no special, or even defined, role in the relevant conduct.  Given his lack of worldly experience, Mr. Bodden Dixon would not even have had the means to perform any special

function within the conspiracy. Mr. Bodden Dixon was merely an able body who was on hand to perform remedial tasks during the transportation of the drugs. As such, he squarely fits within the example provided for in the 2015 amendment to section 3B1.2 as a participant "who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks." USSG 3B1.1 cmt, n. 3. Therefore, using the Guidelines commentary and the corresponding factors delineated in *De Varon*, Mr. Bodden Dixon respectfully requests that this Court determine that a downward variance of at least two levels to adequately reflect his status in the conspiracy.

## II. <u>Overall Sentencing Considerations and the 18 U.S.C. § 3553(a) Factors</u>

The facts and circumstances surrounding this case do not call for the imposition of a sentence as great as the Guidelines would suggest. The advisory Guidelines range, no matter how it is calculated, will call for the imposition of a substantial prison sentence in this case. The Guidelines, however, "as a matter of administration and to secure nationwide consistency[,]… should be the starting point and the initial benchmark," but are not the only consideration in sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). After properly calculating the Guidelines range, the District Court must then make an individualized assessment of the case

and consider each of the factors set forth in 18 U.S.C. § 3553(a) before deciding upon a sentence. *Id.* at 49-51. Those factors include:

> (1) the nature and circumstances of the offense;
> (2) the history and characteristics of the defendant;
> (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
> (4) the need to protect the public; and
> (5) the Guidelines range, as well as
> (6) the kinds of sentences available;
> (7) the need to avoid sentencing disparities among similar defendants who have been found guilty; and
> (8) the need to provide restitution to victims of the offense.

*United States v. Martin*, 455 F.3d 1227, 1236 (11th Cir. 2006) (citations omitted). A consideration of the various 3553(a) factors applicable in the instant case establish that a sentence within the applicable proposed Guidelines range would be a punishment greater than necessary to accomplish the purposes of sentencing set forth in section 3553(a).

In the past year, some defendants in virtually identical cases within the Middle District have been given minor role consideration, which places them in a Guidelines range of 70 to 87 months, prior to consideration of 5K1.1 matters or other potential variances. Some of these defendants have received additional reductions based on cooperation and/or additional downward variances and received downward variances to as low as 41 months incarceration. Regardless of the Court's position

on the issue of minor role, there's been a recent trend among the judges in this district to impose significantly lower sentences on these types of cases.

Counsel respectfully suggest that this trend may in part be as a result of seeing kingpins of drug cartels such as Luis Augustine Caicedo-Velandia "Don Lucho" ultimately only serving five years. United States v. Luis Augustine Caicedo-Velandia, 8:08-CR-00152. He served such a short sentence despite the fact that he was the leader of the largest drug cartel in Colombia, so large that his leadership role, to this day Guiness Book of World Records lists him as the leader of the largest drug money laundering organization in the world.[1]  A significant number of the under-bosses working for the "Don Lucho" Cartel ended up being sentenced to less than 60 months in this District. These underbosses were so far removed and high above defendants like this defendant that they probably did not know and were unknown to the bosses of bosses who recruit poor fishermen for the criminal enterprises.

---

[1] Luis Agustin Caicedo Velandia, "Don Lucho" is believed to be the leader of Colombia's largest drug trafficking and money-laundering network. According to police, between 2005 and 2009 he laundered more than $1.5 billion (£913.6 million) with profits reaching an estimated $5 billion by 2010, too much even for his network to launder. https://www.guinnessworldrecords.com/world-records/largest-known-drug-money-laundering-operation; (last visited March 30, 2021)

Another factor for the downward trend in sentencing defendants like John David Bodden Dixon may be the base annual cost of incarceration as indicated in the presentence report of $39,365.00 per year and to what degree the expenditure of a lengthy prison sentence is warranted. Presumably, this annual cost will significantly increase with the current Covid-19 virus still spreading throughout many BOP facilities.

Examining some of the very low sentences imposed within our district over the past decade, particularly the sentence of the leader of the world's most powerful Drug Trafficking organization at the time of his arrest and prosecution, we respectfully propose that a reasonable sentence based on a downward variance between 41 months and 87 months would be reasonable, just, and consistent with the goals of sentencing.

Mr. Bodden Dixon is 38 years old. He was born in San Luis, Haiti and was raised by both of his parents until the age of ten, when he moved with his father to Honduras after his parents separated. His father died later that year from a construction accident, leaving a young John Bodden Dixon with his step-mother, who immediately kicked him out after his father died. At ten years old he was homeless and living on the docks, often doing odd jobs wherever he could find them. He is the father of four young children, ages six, ten, twelve, and thirteen. After years of cleaning boats, washing houses, and working on a plantain farm, Mr. Bodden

Dixon went to Colombia in 2019 seeking employment so he could send money to his family in Honduras. Many of the jobs he had worked until that time paid around $20.00 USD daily. Mr. Bodden Dixon has worked hard to provide for his family but has frequently struggled financially far beyond what most of can imagine living in the United States.

Mr. Bodden Dixon further struggled in the sense that he was homeless from the age of ten until adulthood, after being tossed to the streets by his stepmother. After that experience, Mr. Bodden Dixon promised to never let his own children go hungry or without shelter. Mr. Bodden Dixon stands before this Court as a man not motivated by greed or an unquenchable thirst for material wealth, but, rather, as a man motivated by the desire to provide his family with basic human needs.

Given his age and his life history, Mr. Bodden Dixon is in an excellent position to better himself while in the Bureau of Prisons. The months he has spent incarcerated since his arrest have opened his eyes to the gravity of the mistake he made, and the impact it has had on his children, not only emotionally, but financially as well; the opposite of what he intended for his family. He is hopeful that he will be placed in a facility where he can not only participate in educational programs, but also work so that he may still be able to provide support for his family while incarcerated.

Mr. Bodden Dixon is also eager to learn to read and write in English and to hopefully learn trades, including but not limited to automobile mechanics and air conditioning that will allow him to obtain gainful employment and lawfully support his family in Honduras upon his return. Under the circumstances, the imposition of a sentence significantly below the advisory Guidelines range would be sufficient, but not greater than necessary, to reflect the factors to be considered at sentencing pursuant to 18 U.S.C. § 3553.

## CONCLUSION

Based on the foregoing, Mr. Bodden Dixon respectfully requests that this Honorable Court vary downward from the proposed advisory Guidelines range based on the reasons set forth above and that it, likewise, consider the unique facts and circumstances of this case and impose a downward variance sentence below the adjusted Guidelines range between 41 and 87 months..

Respectfully Submitted,

*s/Bjorn E. Brunvand*
BJORN E. BRUNVAND, ESQ.
BRUNVAND WISE, P.A.
615 Turner Street
Clearwater, FL 33756
Telephone: 727-446-7505
Facsimile: 727-446-8147
E-Mail: Bjorn@acquitter.com
Florida Bar # 0831077
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 30, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*s/Bjorn E. Brunvand*
BJORN E. BRUNVAND, ESQ.
BRUNVAND WISE, P.A.
615 Turner Street
Clearwater, FL 33756
Telephone: 727-446-7505
Facsimile: 727-446-8147
E-Mail: Bjorn@acquitter.com
Florida Bar # 0831077
Counsel for Defendant
